1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    PETER WILEY, et al.,                      Case No.15-cv-05584-JST

8                  Plaintiffs,

9           v.                                 **ORDER DENYING IN PART AND
                                                GRANTING IN PART CALIBER'S
10   CALIBER HOME LOANS, INC., et al.,          MOTION FOR JUDGMENT ON THE
                                                PLEADINGS**
11                Defendants.                   Re: ECF No. 55

12

13          Before the Court is Defendant Caliber Home Loans, Inc.'s Motion for Summary Judgment.

14   ECF No. 55.  For the reasons set forth below, the Motion for Summary Judgment is denied in part,

15   and granted in part.

16   **I.     BACKGROUND**

17          **A.     Factual Background**

18          In 1989, Plaintiffs Peter Wiley and Calliope Ladas purchased the property at 17797

19   Sonoma Highway, Sonoma, California, 95476 ("the Property").  ECF No 1-1 ("Compl.") at ¶ 18.

20   In 2004, Plaintiffs took out a $280,000 loan on the Property.  ECF No. 58-1 at 2.  Washington

21   Mutual was Plaintiffs' original lender, ECF No. 58-1 at 1, but the loan was assigned to Defendant

22   JP Morgan Chase & Co. ("Chase") in 2013, id. at 28, and then to U.S. Bank Trust in 2015, id. at

23   31.  Caliber began servicing Plaintiffs' loan in January 2015.  Id. at 34.

24          Caliber claims that Plaintiffs first fell behind on their loan payments in 2009.  ECF No. 58

25   at 3.  Plaintiffs dispute this timeline, stating that they did not miss a payment until 2013.  ECF No.

26   60 at 2.  According to a declaration by a Caliber employee who reviewed the company's records,

27   Plaintiffs first sought a loan modification in 2009, but Chase denied that request due to excessive

28   obligations.  Id. at 3.  Caliber also states that "Chase offered Plaintiffs a repayment plan on

United States District Court
Northern District of California

1    February 21, 2012 to cure default, but Plaintiffs did not accept the offer." Id.  Finally, Caliber

2    states that Chase again reviewed Plaintiffs for a loan modification in May 2013, but Plaintiffs did

3    not qualify.  Id.  Even though Caliber has submitted the declaration of a Default Service Officer

4    who states that he reviewed the "business records relating to the loan that is relevant to this

5    action," ECF No. 58 at 2, and claims that his testimony regarding these events is based on those

6    records, none of the records Caliber submitted with its motion discusses or mentions the events of

7    2009 or 2012.  Plaintiffs dispute this version of events, and claim that they first inquired about a

8    loan modification in the spring of 2013, but received no response.  ECF No. 60 at 2.

9         The parties agree that Plaintiffs applied for a modification in 2015, which Caliber denied.

10   Caliber claims it sent an initial letter "denying" the request as incomplete, ECF No. 58 at 7, but the

11   text of the letter actually states that Caliber was "not able to complete the review of [their] loss

12   mitigation request" because it received an "incomplete loss mitigation application package."  ECF

13   No. 58-1 at 53.  Plaintiffs assert that Defendants failed to provide them with a single point of

14   contact, repeatedly demanded that Plaintiffs provide the same documents they had already

15   produced, and generally "sent inconsistent and conflicting requests and information."  ECF No. 60

16   at 4.  On September 14, 2015, Caliber sent Plaintiffs another letter stating that Plaintiffs'

17   application package was "complete and ready for review."  ECF No. 85-1 at 60.  Both parties

18   acknowledge that Caliber finally denied the modification on October 14, 2015, when it sent

19   another letter explaining that Plaintiffs' low loan-to-value ratio made them ineligible.  Id. at 63-64.

20   Plaintiffs complain that this letter was "ambiguous" and failed to mention their right to appeal the

21   denial.  ECF No. 60 at 3

22        Complicating this case is the fact that in 2013, the County of Sonoma used its eminent

23   domain powers to purchase part of the Property in order to widen the adjacent Sonoma Highway.

24   ECF No. 65-1.  As compensation, "governmental authorities deposited $25,000.00" with a title

25   company in the names of Plaintiffs and their then-lender, Chase.  Id.; ECF No. 60 at 2.  Plaintiffs

26   state that half of this money was intended for use building a fence that had been destroyed when

27   the highway was widened, but that they "planned to use the rest of the $25,000 to bring their

28   mortgage loan up to date."  Id.  Plaintiffs claim, however, that Chase refused to release the funds.

1    Id.  After Chase transferred the servicing of Plaintiffs' loan to Caliber, Plaintiffs say Caliber also

2    refused to release the $25,000.  Id. at 3.  Their inability to access the funds allegedly contributed to

3    Plaintiffs' inability to come current on their mortgage.  Id.

4         On October 23, 2015, the Property was sold at a trustee's sale.  ECF No. 58-1 at 65.

5    Plaintiffs never received a Notice of Trustee's Sale because the "foreclosing trustee sent it to the

6    wrong address, causing the Notice of Trustee's Sale to be returned."  ECF No. 60 at 3

7         **B.     Procedural Background**

8         Plaintiffs originally filed their case in state court, and Chase removed it to this Court.  ECF

9    No. 1.  On March 14, 2016, Caliber answered Plaintiffs' complaint.  ECF No. 26.  On March 16,

10   2016, Plaintiffs substituted Miguel De Sanz for a Doe Defendant.  ECF No. 30.  Sanz moved to

11   dismiss on April 14, 2016, ECF No. 39, and the parties later agreed to dismiss Sanz as a

12   Defendant.  ECF No. 45.  The parties also agreed to dismiss Chase as a Defendant on March 18,

13   2016.  ECF No. 35.  The final Defendant, MTC Financial, has not filed a response to Plaintiffs'

14   Complaint.  On September 30, 2016, Caliber filed a motion for judgment on the pleadings,

15   accompanied by a request for judicial notice.  ECF Nos. 47-50.  The Court denied Caliber's

16   motion on December 7, 2016.  ECF No. 54.

17   **II.    LEGAL STANDARD**

18        Summary judgment is appropriate "if the pleadings, depositions, answers to

19   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

20   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

21   of law."  Fed. R. Civ. P. 56(c).  Summary judgment must be supported by "facts as would be

22   admissible in evidence." Fed. R. Civ. P. 56(e).  In order to prevail, a party moving for summary

23   judgment must show the absence of a genuine issue of material fact with respect to an essential

24   element of the non-moving party's claim.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

25   Once the movant has made this showing, the burden then shifts to the party opposing summary

26   judgment to designate "specific facts showing there is a genuine issue for trial."  477 U.S. at 323.

27   The court draws all reasonable factual inferences in favor of the non-movant.  Anderson v. Liberty

28   Lobby Inc., 477 U.S. 242, 255 (1986).  "[A]t the summary judgment stage," courts are "not

United States District Court
Northern District of California

3

1    permitted to weigh evidence." Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1121

2    (9th Cir. 2010).  Where the moving party would not bear the burden of proof at trial, that party

3    bears the initial burden of either producing evidence that negates an essential element of the non-

4    moving party's claims, or showing that the non-moving party does not have enough evidence of

5    an essential element to carry its ultimate burden of persuasion at trial.  See Nissan Fire & Marine

6    Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party satisfies its initial

7    burden of production, then the non-moving party must produce admissible evidence to show there

8    exists a genuine issue of material fact. Id. at 1102–03.

9    **II.      DISCUSSION**

10          **A.      Standing**

11          As in its Motion for Judgment on the Pleadings, Caliber argues that Plaintiffs lack standing

12   because they failed to allege that they tendered the amount owed on the loan.  ECF No. 56 at 12.

13   The Court has already explained why it will not apply the tender rule in this case.  ECF No. 54 at

14   3-4.  Caliber's only new argument is that application of the tender rule would not be inequitable

15   because "Plaintiffs failed to make their mortgage payments since 2009."  ECF No. 56 at 12.  But

16   that fact is disputed; Plaintiffs argue they first fell behind in 2013, ECF No. 60 at 2, and Caliber

17   offers no evidence beyond the declaration of its employee that non-payment began four years

18   earlier, ECF No. 58 at 3.  In the face of these competing declarations, the Court declines to upset

19   its prior ruling on the tender rule.

20          **B.      Merits**

21          Caliber filed this motion for summary judgment only a week after the Court denied its

22   motion for judgment on the pleadings.  Caliber offers little in the way of new evidence beyond the

23   property documents recorded in Sonoma County that the Court already took judicial notice of in

24   its order denying judgment on the pleadings.  ECF No 54 at 3.

25          **1.      Illegal Trustee's Sale**

26          By way of review, Plaintiffs ground their illegal trustee's sale claim in 1) multiple

27   violations of the California Homeowner's Bill of Rights ("HBOR"), and 2) allegations of

28   negligence.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

### a.      HBOR

Plaintiffs list the following violations of the HBOR that they claim require setting aside the

trustee's sale of the Property: section 2923.6(c), section 2923.6(d), section 2923.6(f), and section

2924.3(3)[1]. Section 2923.6(c) prohibits servicers[2] from "dual tracking," or pursuing foreclosure

proceedings while a loan modification is pending. Plaintiffs argue that Caliber improperly

pursued foreclosure while their 2015 modification application was pending. In response, Caliber

recycles its argument that the dual tracking provision does not apply because Plaintiffs had already

been reviewed for a modification prior to January 1, 2013. ECF No. 56 at15. Caliber is correct

that under section 2923.6(g),

> the mortgage servicer shall not be obligated to evaluate applications from
> borrowers who have already been evaluated or afforded a fair opportunity to be
> evaluated for a first lien loan modification prior to January 1, 2013, or who have
> been evaluated or afforded a fair opportunity to be evaluated consistent with the
> requirements of this section, unless there has been a material change in the
> borrower's financial circumstances since the date of the borrower's previous
> application and that change is documented by the borrower and submitted to the
> mortgage servicer

But it is not, as Caliber argues, "undisputed" that any earlier loan modification applications were

submitted or denied. Notably, Caliber submits supporting documents related to the 2015

modification, but it does not attach the business records on which its employee relied to describe

the earlier modification attempts. Nor does the initial letter declining to review Plaintiffs' 2015

application due to its incompleteness indisputably constitute a denial. Given that Plaintiffs dispute

that they received any responses to their loan modification requests before the 2015 denial, Caliber

has not shown "there is no genuine issue as to any material fact" related to the dual tracking claim.

Fed. R. Civ. P. 56(c).[3]

---

[1] The Court assumes based on the allegations that Plaintiffs intended to cite section 2924.3(a)(3), not section 2924.3(3).

[2] The HBOR generally applies to servicers and lenders, but the Court refers only to servicers here because that was Caliber's role for Plaintiffs' loan.

[3] Caliber's procedural irregularity argument is also a non-starter. ECF No. 56 at 15. Plaintiffs argue that the only modification for which they applied was improperly declined and that they did not have the chance to appeal, negotiate a short sale, or otherwise sell their home because a foreclosure sale occurred before the expiration of the statutory 30-day waiting period. ECF No. 60

United States District Court
Northern District of California

1    Next, Plaintiffs claim a violation of HBOR § 2923.6(d).  Subsection (d) provides that "[i]f

2 the borrower's application for a first lien loan modification is denied, the borrower shall have at

3 least 30 days from the date of the written denial to appeal the denial and to provide evidence that

4 the mortgage servicer's determination was in error."  In its motion for summary judgment,

5 "Caliber acknowledges that the trustee's sale occurred less than 30 days after Caliber denied

6 Plaintiffs' loan modification."  ECF No. 56 at 17.  Caliber's only argument is that Plaintiffs cannot

7 allege a violation under section 2923.6(d) because, as they claimed in response to the dual tracking

8 claim, "Caliber never had any obligation to review Plaintiffs' 2015 loan modification."  Id.  The

9 Court already rejected that argument above as resting on disputed facts.

10    Caliber argues that it is entitled to summary judgment on Plaintiffs' section 2923.6(f)

11 claim for the same reason.  That subsection requires a mortgage servicer, when denying a loan

12 modification, to provide a written notice with "instructions regarding how to appeal the denial."

13 In its motion, Caliber "acknowledges the denial letter did not contain instructions regarding how

14 to appeal the denial, but argues that "Caliber never had any obligation to review Plaintiffs' loan

15 modification under § 2923.6(g)."  ECF No. 56 at 16.  Yet again, this argument fails because it

16 requires the Court to adopt Caliber's version of disputed, material facts about when Plaintiffs

17 applied for loan modifications and the timing and content of Defendants' response.

18    Finally, Plaintiffs allege that Caliber's violated HBOR section 2924.3(a)(3) when it sent

19 the required notice of trustee's sale to the wrong address.  ECF No. 60 at 3.  Caliber responds that

20 the notice requirements in section 2924.3(a)(3) apply only to "each mortgagee, beneficiary or

21 owner of a promissory note."  ECF No. 56 at 18.  Caliber is correct that section 2924.3(a)(3) does

22 not appear to apply to mortgagors like Plaintiffs.  The Court agrees that Caliber is entitled to

23 judgment on this issue.

24    Separately, Caliber argues that Plaintiffs' Civil Code section 1511 defense[4], which excuses

25 _____

26 at 3.; ECF No. 59 at 29.  The fact that Caliber denied the modification itself does not moot
Plaintiffs' dual tracking claim.

27 [4] The order denying the motion for judgment on the pleadings mistakenly stated that Plaintiffs

28 asserted a *violation* of Civil Code section 1511.  Caliber is correct that section 1511 is a *defense* to
non-performance.

1    non-performance "[w]hen such performance or offer is prevented or delayed by the act of the

2    creditor," fails as a matter of law.  Plaintiffs claim that Section 1511 applies because "Chase and

3    Caliber held up plaintiffs' interest in the $25,000.00 approximately two (2) years," which

4    contributed to their inability to come current on their mortgage. ECF No. 1 at 13.  But as Caliber

5    points out, aside from this assertion in their Complaint (repeated in Plaintiffs' declaration in

6    support of their opposition brief), Plaintiffs have offered no evidence that Caliber had any role in

7    withholding the $25,000 eminent domain payment.  ECF No. 56 at 18.  While those statements

8    may have been enough at the pleadings stage, they do not suffice now.[5]  See Nissan Fire & Marine

9    Ins. Co, 210 F.3d at 1102 (holding that if the moving party shows that the non-moving party does

10   not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial,

11   then the non-moving party must produce admissible evidence to show there exists a genuine issue

12   of material fact).  Nonetheless, the fact that Plaintiffs cannot rely on Section 1511 has no impact

13   on the viability of their HBOR claims.  Caliber could still have unlawfully engaged in dual

14   tracking, for example, even if it had no role in preventing the distribution of Plaintiffs' payment

15   from the County.

### b.    Negligence

17        Caliber also argues that it is entitled to summary judgment on Plaintiffs' negligence claim.

18   ECF No. 60 at 20.  The Court agrees.  In the order denying Caliber's motion for judgment on the

19   pleadings, the Court explained there is a divide among the California Courts of Appeal over the

20   validity of the rule that "a financial institution owes no duty of care to a borrower when the

21   institution's involvement in [a] loan transaction does not exceed the scope of its conventional role

22   as a mere lender of money." ECF No. 54 at 7 (citing Nymark v. Heart Fed. Sav. & Loan Assn.,

23   231 Cal. App. 3d 1089, 1096 (1991); Hernandez v. Select Portfolio, Inc., No. CV 15-01896 MMM

24   AJWX, 2015 WL 3914741, at *21 (C.D. Cal. June 25, 2015).  The order did not address the

25   divide, however, finding that here, "Caliber's role in Plaintiffs' loan arguably 'exceed[ed] the

26   scope of its conventional role as a mere lender of money' when it refused to release the $25,000

27   _____

28   [5] The Court expresses no opinion on whether Plaintiffs will be able to demonstrate that the
     remaining Defendant, MTC Financial, played a role in withholding these funds.

1    due Plaintiffs from the eminent domain sale." ECF No. 54 at 7.  But now that the Court has

2    concluded that Plaintiffs failed to adduce any evidence that Caliber withheld the $25,000, that fact

3    can no longer form the basis of their negligence claim.

4         Nonetheless, this Court still need not determine whether, as a general matter, a residential

5    lender owes a duty of care to a borrower in connection with a residential loan modification

6    application.  Even those courts that have held a duty exists in the residential context only did so

7    when the lender or servicer "affirmatively promise[d] a residential home loan modification to a

8    borrower." Hernandez, 2015 WL 3914741, at *18 (citing cases).  Here, there is no evidence that

9    Caliber affirmatively promised that it would modify Plaintiffs' loan.  Therefore, even if servicers

10   generally owe a duty of care to residential borrowers seeking loan modifications, that duty was not

11   triggered here.  Caliber is entitled to summary judgment on Plaintiffs' negligence theory.

12        **B.      Unfair Competition Law**

13        As Caliber itself argues, "Plaintiffs predicate their Unfair Competition Law ("UCL") claim

14   on the same allegations and theories" from their illegal trustee's sale claim.  ECF No. 62 at 14.

15   Because Plaintiffs' illegal sale claim is viable, so is their claim under the UCL.

16                         **CONCLUSION**

17        Defendant Caliber's Motion for Summary Judgment is denied in part, and granted in part.

18        IT IS SO ORDERED.

19

20   Dated:  February 27, 2017

21                                         _____
                                              JON S. TIGAR
22                                            United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California